LYNCH et al. v. JOHN SINGLE PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

**1. TRADE-NAMES—UNION LABEL—STATUTES.**

A union of employés, having affiliated with and subject to its jurisdiction various councils, adopted and registered a label to designate the product of the labor of the members thereof, and transmitted the same to a subordinate council. *Held* that, when the union adopted the label, it adopted it for the members of its various subordinate councils, within Labor Law, Laws 1897, p. 466, c. 415, § 15, providing that a union of employés may adopt a label designating the products of the labor of the members thereof.

**2. SAME—ASSIGNABILITY.**

Labor Law, Laws 1897, p. 466, c. 415, § 15, providing that a union of employés may adopt a label to designate the product of the labor of the members thereof, and the certificate issued by the secretary of state shall not be assignable, confers on a union a property right in a label adopted and registered by it, which right it cannot assign, but which right it may confer on its members composing a subordinate branch.

**3. SAME—INFRINGEMENT—ACTIONS—PARTIES.**

Labor Law, Laws 1897, p. 466, c. 415, § 16, as amended, makes it a misdemeanor to illegally use a label adopted by a labor union, and provides that a union may enjoin a wrongful use of its label and recover the damages resulting. A labor union adopted and registered a label to designate the product of the labor of its members. The union had affiliated with it and subordinate to it various councils. The label adopted by the union was furnished to a council. *Held*, that the union and the subordinate council properly united in an action for a wrongful use of the label.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 98.]

Nash and Williams, JJ., dissenting.

Appeal from Special Term.

Action by James M. Lynch, as president of the International Typographical Union of North America, and James Taylor, as president of the Allied Printing Trades Council of the City of Syracuse, against the John Single Paper Company. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Affirmed, with leave to defendant to plead over, on payment of the costs of the demurrer and of the appeal.

The opinion of Justice Andrews, delivered at Special Term, is as follows:

Assuming that such an action as the present may be maintained under and by virtue of the labor law, there is no misjoinder of parties plaintiff. If the International Typographical Union is the owner of the label in question, and if it has conferred upon the Allied Printing Trades Council the exclusive right to use such label in the city of Syracuse, both may properly be joined as plaintiffs to prevent its unauthorized use and to recover such damages as its misuse may have occasioned. The situation is analogous to that where the owner of a patent has given exclusive license for a certain territory. Here both owner and licensee should be plaintiffs in equitable actions brought against one infringing within that territory. Walker on Patents (4th Ed.) § 400.

The more important question involved in this demurrer is, therefore, whether a cause of action is stated in favor of the International Typographical Union and the Allied Printing Trades Council, its licensee. Section 15 of the labor law (Laws 1897, p. 466, c. 415) provides that a union or association of em-

ployés may adopt a device in the form of a label for the purpose of designating the products of the labor of the members thereof. Copies are to be filed in the office of the Secretary of State, who shall issue a certificate of the filing thereof. This certificate shall not be assignable by the union or association to whom it is issued. Section 16, as originally adopted, provided that a penalty might be collected in a civil action by the party aggrieved against one using a label without authority, and such aggrieved party was authorized to maintain an action to enjoin the unauthorized use of such label and to recover such damages as might result from such unauthorized use. In 1902 the provision relating to the penalty was stricken out, and a provision making the unlawful use of the label a crime was inserted. Whether or not, independent of the statute, the International Typographical Union had a property right to this label which the courts would protect, see Strasser v. Moonelis, 23 Jones & Spencer (N. Y.) 197. At least, the statute, so far as the equitable remedy is concerned, is not penal. It should be fairly and liberally construed, so that the wrongs which the Legislature intended to redress may be reached.

It appears from the complaint that the International Typographical Union is an association of employés, having affiliated with it and subject to its jurisdiction various printing trades councils. One of these, the Allied Printing Trades Council, is a subordinate body of, and affiliated with, and subject to the general control and direction of the International Typographical Union. In 1896 the International Typographical Union adopted and registered a certain label "for the purpose of designating the products of the labor of the members of the various bodies affiliated with it and under its jurisdiction and control"; and for that purpose it has "furnished and transmitted the same to the local unions and subordinate bodies of said International Typographical Union." It may fairly be inferred, therefore, that the various trades councils are local branches of the International Typographical Union. Their members are its members, and, when it adopted a label for the purpose of designating the products of the labor of such members, it might fairly be said, in the language of the statute, to have adopted it for the purpose of designating the products of its members. It next appears that the International Typographical Union has conferred upon the Allied Printing Trades Council of Syracuse the exclusive right to use and control this label in that city. The statute has conferred a property right in such a label, even if its originator did not already possess it. This right could be sold or assigned, unless these acts were prohibited. Fairly construed, the statute does mean to prohibit such an assignment. Not, however, a license conferred by the Union or association upon some of its members or legal branches to use the label in a specified locality.

Next it is stated that the defendant has without authority used this label, and intends to continue such use, to its profit and the damage of the plaintiffs, and judgment for an injunction and damages is therefore asked. It is claimed that under the statute only the union or association filing the label may maintain an action to prevent its unjustifiable use, and that, therefore, no cause of action is stated by the Allied Printing Trades Council. Probably such an action might be maintained independently of the statute (Strasser v. Moonelis, cited above), but in any event the construction claimed is too narrow. The language is not exclusive. To so hold would, in such an action as the present, where the presence of both plaintiffs is necessary to a complete determination of the questions involved, be a denial of justice. What the Legislature meant, and all that it meant, was that the parties injured might maintain such an action.

The demurrer must therefore be overruled, upon the usual terms.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Hopkins & Howlett, for appellant.
Thompson, Woods & Smith, for respondents.

PER CURIAM.    Interlocutory judgment affirmed, with costs, with leave to the defendant to plead over, upon payment of the costs of the demurrer and of this appeal, on opinion of Andrews, J., delivered at Special Term.

McLENNAN, P. J., and SPRING and KRUSE, JJ., concur.

NASH, J. (dissenting).    The complaint alleges:

"That the International Typographical Union of North America is an unincorporated association, consisting of more than seven persons, and having its principal office and place for the transaction of business in the city of Indianapolis, Indiana.    That it is a union and association of employés who are printers and employed in kindred trades, and its jurisdiction and membership extends throughout the United States and Canada.    That it has affiliated with it, and subject to its jurisdiction and control, printing trades councils in various parts of the United States and Canada, and particularly in the city of Syracuse.    That the plaintiff James M. Lynch is the duly elected, authorized, and acting president of said International Typographical Union of North America.    That the Allied Printing Trades Council is an unincorporated association, consisting of more than seven persons, having its principal office and place of business in the city of Syracuse, and is a subordinate body of, affiliated with, and subject to the general control and direction of the International Typographical Union of North America.    That James Taylor is the duly elected, authorized, and acting president of said Allied Printing Trades Council of the city of Syracuse.    That the International Typographical Union, as a union or association of employés engaged in printing and kindred trades, prior to the year 1896 adopted a device in the form of a label, and ever since has been the owner of, and in possession of, the sole and exclusive control of said label, known as the 'Allied Printing Trades Council Union Label.'    That said label is furnished and transmitted to the local unions or subordinate bodies of said International Typographical Union, upon certain agreements and contracts with said unions or subordinate bodies, for the purpose of identifying and designating the products of the labor of the members thereof. That the Allied Printing Trades Council is a subordinate body of said International Typographical Union of North America, and under an agreement with said International Typographical Union has the exclusive right to the use of said label hereinbefore described, within the territory comprised within the limits of the city of Syracuse, and that no printer or employing printer, or any person or corporation, has the right or authority to use said label for any purpose, except within the consent of and under a label agreement with said Allied Printing Trades Council of the City of Syracuse.    That heretofore, and on or before the 5th day of August, 1896, the International Typographical Union of North America, under and pursuant to the provisions of sections 15 and 16, c. 415, p. 466, of the Laws of 1897, known as the 'Labor Law,' and the several acts amendatory thereof, caused to be filed and registered with the Secretary of State of the state of New York the label above described, comprising the words, 'Allied Printing Trades Council Union Label,' for the purpose of designating the products of the labor of the members of the various bodies affiliated with it, and under its general jurisdiction and control. That prior to the year 1904 the defendant entered into an agreement with the Allied Printing Trades Council of the City of Syracuse, whereby it was allowed to use said label, and in consideration thereof agreed with said Allied Printing Trades Council to employ no skilled labor in conducting its printing trade, except such as were members of the local unions affiliated with said Allied Printing Trades Council, and would not permit its skilled laborers to work more than the prescribed number of hours per day, and that in the case of any violation of said agreement by defendant the other party might terminate it at its option.    That during the year 1903 defendant employed press feeders who were not members of the 'Assistant Pressmen and Feeders' Union, and that said Allied Printing Trades Council of the City of Syracuse thereupon exercised its option and terminated said agreement.    That defendant has used

and displayed said label since the termination of its agreement with said Allied Printing Trades Council, and threatens to continue its use. That by reason of such unauthorized and unlawful use of said labels the plaintiffs have sustained damage and the defendant derived profits, and thereby become liable to pay the plaintiffs, under the provisions of section 16 of the labor law, as amended by chapter 523, p. 1293, of the Laws of 1904, the sum of five thousand dollars."

The complaint then asks for an injunction restraining the defendant from using the label, "and that plaintiffs recover judgment against the defendant for the sum of $5,000 as damages resulting from the wrongful manufacture, use, display, or sale of said label on all goods and products bearing the same, and profits derived from the manufacture, use, display, or sale thereof."

It is sought to bring the allegations of the complaint within sections 15 and 16 of the labor law (chapter 415, p. 466, of the Laws of 1897) :

"Sec. 15. Labels, Brands, etc., Used by Labor Organizations.—A union or association of employés may adopt a device in the form of a label, brand, mark, name or character, for the purpose of designating the product of the labor of the members thereof. Duplicate copies of such device shall be filed in the office of Secretary of State, who shall, under his hand and seal, deliver to the union or association filing or registering the same a certified copy and a certificate of the filing thereof, for which he shall be entitled to a fee of one dollar. Such certicate shall not be assignable by the union or association to whom it is issued.

Section 16 provides a penalty for the illegal use of labels, and:

"After filing copies of such device, such union or association may commence an action to enjoin the manufacture, use, display or sale of counterfeit or colorable imitations of such device, or of goods bearing the same, and the court may restrain such wrongful manufacture, use, display or sale, and every unauthorized use or display by others of the genuine devices so registered and filed, if such use 'or display is not authorized by the owner thereof, and may award to the plaintiff such damages resulting from such wrongful manufacture, use. display, or sale as may be proved, together with the profits derived therefrom.

The plaintiffs do not by the allegations of the complaint bring their case within the provisions of the statute. It provides that a union or association of employés may adopt a device in the form of a label, for the purpose of designating the products of the labor of the members thereof; that is, of its own members. The allegation of the complaint is that the International Typographical Union adopted a device in the form of a label, not, as provided by the statute, for the purpose of designating the products of the labors of the members thereof, but for. the purpose of designating the products of the labor of members of local unions or subordinate bodies of said International Typographical Union. It is not alleged that the International Typographical Union adopted a label for the purpose of designating the products of the labor of its members. The allegation is that under and pursuant to the provisions of the statute the International Typographical Union caused its label to be filed and registered with the Secretary of State of New York, "for the purpose of designating the products of the labor of the various bodies affiliated with it and under its general jurisdiction and control." Bodies affiliated with or subordinate to the International Typographical Union, may, or may not, be unions or associations

of employés. It is not alleged that the Allied Printing Trades Council of the city of Syracuse is a union or association of employés. It is only a union or association of employés which, under the statute, may adopt a label and avail itself of the rights and privileges provided by the statute. It is alleged in the complaint that the Allied Printing Trades Council of the City of Syracuse, under agreement with the International Typographical Union prior to and subsequent to the date of registry of said label, has been continuously entitled to the exclusive right use and control of said label within the city of Syracuse. It is expressly provided that a certificate shall not be assignable by the union or association to whom it is issued. It is plainly the purpose of the statute to give to each union or association the right to the exclusive use of a label, and to protect every union or association in such use. To entitle a union or association to the rights and privileges of the statute, the union or association must bring its case strictly within its provisions.

The interlocutory judgment and order should be reversed, and the demurrer to the complaint sustained.

WILLIAMS, J., concurs.